```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------X
                                                    :
FEDERAL TRADE COMMISSION,                           :
                                                    :    12 Civ. 7186 (PAE)
                                   Plaintiff,       :    12 Civ. 7188 (PAE)
                -v-                                 :    12 Civ. 7191 (PAE)
                                                    :    12 Civ. 7192 (PAE)
PECON SOFTWARE LTD, et. al.,                        :    12 Civ. 7195 (PAE)
                                                    :
                                   Defendants.      :    OPINION & ORDER
                                                    :
------------------------------------------------------------------------X
```

PAUL A. ENGELMAYER, District Judge:

Plaintiff the Federal Trade Commission (the "FTC") moves for leave to effect service of documents, including the Summons and Complaint, by alternative means on defendants in the following five related cases: *FTC v. Pecon Software Ltd., et al.*, No. 12 Civ. 7186; *FTC v. Zeal IT Solutions Pvt Ltd., et. al.*, No. 12 Civ. 7188; *FTC v. Lakshmi Infosoul Services Pvt Ltd., et. al.*, No. 12 Civ. 7191; *FTC v. Marczak, et. al.*, No. 12 Civ. 7192; and *FTC v. Finmaestros, LLC, et. al.*, No. 12 Civ. 7195. For the reasons that follow, the FTC's motion is granted in part and denied in part.

The FTC also requests that the Court retroactively deem valid the FTC's prior service, by email, of the Summons and Complaint on the defendants. That motion is denied.

I.      Background

On September 24, 2012, the FTC brought these five related actions *ex parte*, each seeking a temporary restraining order ("TRO") and an order to show cause why a preliminary injunction should not be granted.[1] The FTC alleges that the defendants in these five actions operated

---

[1] A sixth related case, *FTC v. PCCare247 Inc., et al.*, No. 12 Civ. 7189, is not the subject of this motion. In that case, defendants obtained counsel, Jack Wenik, Esq. and Marc Ullman, Esq.,

similar schemes that tricked American consumers into spending money to fix non-existent problems with their computers.  As alleged, these schemes were operated in large part out of call centers located in India.  The FTC alleges that the defendants violated Section 5 of the FTC Act by deceiving consumers into purchasing the defendants' computer security or technical support services, and the FTC's Telemarketing Sales Rule ("TSR") by, *inter alia*, making unauthorized calls to consumers who had registered on the National Do Not Call Registry.

On September 25, 2012, this Court entered TROs in each of the five cases, which, *inter alia*, enjoined defendants' business practices and froze various assets of the defendants.

On September 27, 2012, the FTC submitted the Summons, Complaint, and related documents to the Indian Central Authority ("Central Authority") for service on all defendants, in accordance with Federal Rule of Civil Procedure 4(f)(1) and The Hague Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters (the "Hague Service Convention" or "Convention").  The FTC also sent these documents to all defendants by three alternative means: (1) by email to defendants' known email addresses; (2) by Federal Express ("FedEx"); and (3) by process server.

By October 5, 2012, FedEx had confirmed delivery for all defendants relevant here except Wahid Ali.  The FedEx packages sent to Ali's street address came back as undeliverable.  By October 3, 2012, a process server in India had personally delivered the Summons and

---

upon receiving notice of the suit and, during a hearing held on November 13, 2012, opposed the entry of a preliminary injunction.  On November 16, 2012, this Court issued a preliminary injunction against the PCCare247 defendants.  To date, the PCCare247 defendants have failed to comply with the terms of the preliminary injunction.  On January 14, 2013, this Court granted Mr. Wenik and Mr. Ullman's motions to withdraw as counsel due to defendants' failure to pay attorneys' fees.  On March 7, 2013, this Court granted the FTC permission to serve document other than the summons and complaint on the PCCare247 defendants through email and Facebook.  *See* No. 12 Civ. 7189 (PAE), Dkt. 87, *available at* 2013 WL 841037 (S.D.N.Y. Mar. 7, 2013).

Complaint to all defendants except for Wahid Ali and Pecon Software UK. The process server in India was unable to locate Ali and, thus, was unable to serve him. On October 23, 2012, the process server was able to locate and serve Pecon Software UK in London.

On October 9, 2012, this Court held a show-cause hearing as to why a Preliminary Injunction should not issue. None of the defendants in the five cases relevant here appeared for the hearing. That same day, this Court issued a preliminary injunction against all these defendants. To date, defendants have failed to comply with the terms of the preliminary injunction—they have not provided a financial accounting to the FTC, produced customer and product information, or repatriated foreign assets.

The Central Authority has not formally served any defendant pursuant to the Convention. In fact, on November 19, 2012, the Central Authority returned a box containing all of the service documents to the FTC. Due to an administrative oversight, however, the FTC did not realize that the Central Authority had returned the documents until April 26, 2013, at which point the FTC promptly brought this matter to the Court's attention. *See* No. 12 Civ. 7186, Dkt. 27, Ex. A (Declaration of Michael D. Panzera ("Panzera Decl.")) ¶ 17. The box returned by the Central Authority included a form explaining that the documents could not be served because, the "[f]ull address of the party and translation of the documents in the official language of requesting country wherever necessary may be provided in the summon/notice [*sic*]." *Id.*, Att. A. Only one of the 23 separate boxes containing service packages for the various defendants had been opened by the Central Authority. *Id.* ¶ 19.

On April 29, 2013, the FTC emailed the Central Authority and twice called the number listed on the Hague Conference website for the Central Authority, but there was no response. *Id.* ¶ 20. Subsequently, the FTC called the number listed for the Ministry of Law and Justice and,

after four calls, discovered that the number for the Central Authority on the Hague Conference site was incorrect. *Id.*  After receiving a correct number, the FTC called that number and reached the contact person for the Central Authority, Suresh Chandra. *Id.* ¶ 21.  Chandra explained that the Central Authority had been unable to serve the documents "at the address indicated." *Id.* ¶ 22.  When asked whether the Central Authority did not deliver the documents because *all* the addresses were invalid, or because a single address was found to be invalid, prompting the return of the other 22 unopened packages, Chandra did not explain, and directed the FTC to look at the report included in the box of returned documents. *Id.*  When informed that the box did not contain such a report, Chandra asked the FTC to call back the following day. *Id.*

On May 1, 2013, the FTC reached Chandra, after three calls. *Id.* ¶ 23.  Chandra, again, would not or could not provide any guidance as to why the documents had been returned. *Id.* ¶ 24.  Chandra stated that he did not have access to the relevant files and directed the FTC to read the report that had been included with the returned documents. *Id.*  The FTC informed Chandra that no report had been included and requested that another copy be sent. *Id.*  In response, Chandra said that he was "in a meeting" and hung up. *Id.*  The FTC's attempts to contact R.K. Shujra, the Deputy Legal Advisor for the Central Authority, were also unsuccessful. *Id.* ¶¶ 23–24.  Chandra informed the FTC that the Central Authority does not send e-mails, faxes, or make telephone calls, and only communicates by post, and that he would respond to the FTC's inquiries in "due course." *Id.* ¶ 23.

Despite the Central Authority's lack of assistance, in four of these five cases, at least one defendant has confirmed having received actual notice of this action.  On October 9, 2012, Joel Dichter, an attorney based in New York, emailed the FTC stating that he represented the defendants in *Pecon Software*, *Lakshmi*, and *Finmaestros*, for settlement purposes only.  To date,

4

however, Mr. Ditcher has never entered an appearance with this Court.  Additionally, the FTC asserts that on October 8, 2012, Wahid Ali, a defendant in *Marczak*, emailed the FTC to confirm receipt of the documents.  *See* No. 12 Civ. 7192, Dkt. 45, at 3.  The FTC also asserts that on September 27, 2012, Mahesh Shah, a defendant in *Pecon Software*, called the FTC to request that the FTC send all relevant documents to his provided email address.  *See* No. 12 Civ. 7186, Dkt. 24, at 3, 7.  The only defendants who have not confirmed actual notice are those in *Zeal IT*: The corporation Zeal IT Solutions Pvt. Ltd., and its registered officer, Kishore Ghosh, are both located in India and have, to date, not had any contact with the FTC.

On April 9, 2013, the FTC brought these motions, seeking authorization to serve defendants by email, and in some cases, Facebook.  On May 7, 2013, after the FTC realized that the Central Authority had returned the service packages, the FTC filed a supplemental brief seeking an order deeming the FTC's earlier email service valid *nunc pro tunc*.  *See* No. 12 Civ. 7188, Dkt. 26 ("FTC Supp. Br.").

## II.   Applicable Legal Standard

Under Federal Rule of Civil Procedure 4(f)(3), "a Court may fashion means of service on an individual in a foreign country, so long as the ordered means of service (1) is not prohibited by international agreement; and (2) comports with constitutional notions of due process." *SEC v. Anticevic*, No. 05 Civ. 6991 (KMW), 2009 WL 361739, at *3 (S.D.N.Y. Feb. 13, 2009) (citations omitted).  Under Rule 4(f), service of process on foreign corporations may be made in the same manner as on individual defendants.  *See* Fed. R. Civ. P. 4(h)(2).

"Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief.  It is merely one means among several which enables service of process on an international defendant." *Madu, Edozie & Madu, P.C. v. SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 115

(S.D.N.Y. 2010) (citation omitted). "The decision of whether to order service of process under Rule 4(f)(3) is 'committed to the sound discretion of the district court.'" *United States v. Lebanese Canadian Bank*, 285 F.R.D. 262, 266 (S.D.N.Y. 2012) (quoting *Madu*, 265 F.R.D. at 115); *see also In re S. African Apartheid Litig.*, 643 F. Supp. 2d 423, 433 (S.D.N.Y. 2009) ("A court is afforded wide discretion in ordering service of process under Rule 4(f)(3)." (citation omitted)); *Antisevic*, 2009 WL 361739, at *3 ("[Rule 4(f)(3)] provides the Court with flexibility and discretion empowering courts to fit the manner of service utilized to the facts and circumstances of the particular case." (citation omitted)).

"A plaintiff is *not* required to attempt service through the other provisions of Rule 4(f) before the Court may order service pursuant to Rule 4(f)(3), [but] [a] district court may nonetheless require parties to show that they have reasonably attempted to effectuate service on the defendant(s) and that the circumstances are such that the district court's intervention is necessary." *Antisevic*, 2009 WL 361739, at *3 (citation omitted) (emphasis in original); *see also Rio Props., Inc. v. Rio Int'l Interlink*, 284 F.3d 1007, 1015 (9th Cir. 2002) ("[T]he advisory notes [to Rule 4] suggest that in cases of 'urgency,' Rule 4(f)(3) may allow the district court to order a 'special method of service,' even if other methods remain incomplete or unattempted."); *Madu*, 265 F.R.D. at 115 ("[D]istrict courts may impose a threshold requirement for parties to meet before seeking the court's assistance." (citation omitted)).

### III. Discussion

The FTC requests authorization to serve the specified defendants in these five cases by email and, in some instances, by Facebook message. The FTC also requests that its prior delivery of the Summons and Complaint to all defendants by email be deemed valid service, *nunc pro tunc*.

### A. The Proposed Means of Service Are Not Prohibited By International Agreement

The United States and India are signatories to the Hague Service Convention. *See* Status Table, Members of the Organisation, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=conventions.status&cid=17 (last visited Aug. 2, 2013). Article 2 of the Convention provides that "[e]ach contracting State shall designate a Central Authority which will undertake to receive requests for service coming from other contracting States." Hague Convention on Service Abroad of Judicial and Extrajudicial Documents art. 2, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

Article 10, in turn, allows for service of process through alternative means such as "postal channels" and "judicial officers," provided that the destination state does not object to those means. *Id.* art. 10. India has objected to the means listed in Article 10,[2] but that objection is specifically limited to the means of service enumerated in Article 10. *See Gurung v. Malhotra*, 279 F.R.D. 215, 219 (S.D.N.Y. 2011). And "[w]here a signatory nation has objected to only those means of service listed in Article [10], a court acting under Rule 4(f)(3) remains free to order alternative means of service that are not specifically referenced in Article [10]." *Id.*; *see also Anticevic*, 2009 WL 361739, at *4 (permitting service by alternative means where signatory nation did not "explicitly object[]" to such means in its declaration pursuant to the Convention); *In re S. African Apartheid Litig.*, 643 F. Supp. 2d at 434, 437 (requiring express objection to alternative means of service in reservation as to Article 10).

Service by email and Facebook are not among the means listed in Article 10, and India has not specifically objected to them. Numerous courts have held that service by email does not

---

[2] See Declarations, Reservations, Hague Conference on Private International Law, http://www.hcch.net/index_en.php?act=status.comment&csid=984&disp=resdn (last visited Aug. 2, 2013).

7

violate any international agreement where the objections of the recipient nation are limited to those means enumerated in Article 10.  *See, e.g.*, *Gurung*, 279 F.R.D. at 220; *Philip Morris USA Inc. v. Veles Ltd.*, No. Civ. 2988 (GBD), 2007 WL 725412, at *3 (S.D.N.Y. Mar. 12, 2007) (collecting cases authorizing email service).  *But see Agha v. Jacobs*, No. C 07-1800 RS, 2008 WL 2051061, at *2 (N.D. Cal. May 13, 2008) (reference to "postal channels" in Article 10 may include emails).  Service by Facebook is clearly outside the scope of Article 10.  India has not objected to service by Facebook, and the Court knows of no international treaty prohibiting such means.  Therefore, service by means of email and Facebook is not prohibited by international agreement.  The Court, in its discretion, is therefore at liberty to authorize service by such means, provided that due process is also satisfied.  *See FTC v. PCCare247 Inc.*, No. 12 Civ. 7189 (PAE), 2013 WL 841037, at *4 (S.D.N.Y. Mar. 7, 2013).

> **B.** **The Proposed Means of Service Comport With Due Process**

"Constitutional notions of due process require that any means of service be 'reasonably calculated, under all circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'"  *Antisevic*, 2009 WL 361739, at *4 (quoting *Mullane v. Cent. Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)).  Here, service by email is reasonably calculated to provide most, though not all, defendants with notice of future filings in this case.

Service by email alone comports with due process where a plaintiff demonstrates that the email is likely to reach the defendant.  *Gurung*, 279 F.R.D. at 220; *see also Philip Morris*, 2007 WL 725412, at *3 (authorizing service by email where "defendants conduct business extensively . . . through their Internet websites and correspond regularly with customers via email" and rejecting "[d]efendants' objections about theoretical reliability of email service" where plaintiff

"amply demonstrated the high likelihood that defendants would receive and respond to email communications"); *Williams-Sonoma Inc. v. Friendfinder Inc.*, No. C 06-06572 JSW, 2007 WL 1140639, at *2 (N.D. Cal. Apr. 17, 2007) (authorizing service by email where plaintiff "has established that the email accounts [it has] for defendants have been effective means of communicating with defendants").

In the related *PCCare247* case, this Court approved service of documents other than the summons and complaint through email for five defendants in that case. 2013 WL 841037, at *6. Those defendants, like the defendants here, all ran internet-based businesses and used email frequently for communication. In *PCCare247*, the FTC identified email addresses that each individual defendant used in relation to the alleged scheme; accordingly, this Court held that service through email was appropriate because the FTC had "demonstrated a high likelihood that defendants [would] receive and respond to emails sent to [those] addresses." *Id.* at *4. Here, the Court considers whether the FTC has made such a showing as to each defendant in the five cases relevant to this motion.

    1.    *FTC v. Pecon Software*

In *Pecon Software*, the FTC proposes to serve five individual defendants—Mahesh Kumar Shah, Prateek Shah, Sujoy Roy, Zulfiquar Ali, and Vikas Kumar Gupta—by email. The FTC also proposes to serve the three corporate defendants—Pecon Software Ltd., Pecon Infotech Ltd., and Pecon Software UK Ltd.[3]—by email to Mahesh Shah, who is the managing director

---

[3] The FTC served the Summons and Complaint on Pecon Software UK Ltd., a London-based entity, by process server. *See* No. 12 Civ. 7186, Dkt. 20. Accordingly, the FTC only seeks leave to serve other documents on this corporate entity by email. The United Kingdom has not objected to such means of service. *See Aristocrat Leisure Ltd. v. Deutsche Bank Trust Co. Americas*, 262 F.R.D. 293, 307 (S.D.N.Y. 2009); *Guy Carpenter & Co. v. Samengo-Turner*, No. 07 Civ. 3580 (DLC), 2007 WL 1705070, at *2 (S.D.N.Y. June 14, 2007). Despite the FTC's demonstrated ability to serve this company by other means, the Court finds it appropriate for the

and owner of these entities. *See* Novick Decl. Ex. 46 ¶¶ 30–35. For all but one of these defendants, the Court has been able to verify at least one email address used in relation to the alleged telemarketing scheme. Mahesh Shah used the email address mkshah@pecon.co.in to set up a Google Adword account for Pecon. *See* Novick Decl. Ex. 46 ¶¶ 29, 34, Att. F, at 128. Sujoy Roy, a Director of Pecon Software, used the email address soc1919@gmail.com to set up a Google Adword account for Pecon. *See* Novick Decl. Ex. 46 ¶ 29, Att. F, at 129. Zulfiquar Ali, an employee of Pecon, used the email address ali@pecon.co.in to register Pecon's website with GoDaddy. *See* Novick Decl. Ex. 46, Att. E, at 112–18. Finally, Vikas Kumar Gupta, an employee of Pecon, used the email address vikasgupta82@gmail.com to register a Paypal account for a website connected to the scheme. *See* Novick Decl. Ex. 46 ¶ 40, Att. M, at 115. Based on this specific evidence of defendants' use of these email addresses in relation to the alleged scheme, the Court finds that the FTC has demonstrated a high likelihood that defendants would receive service at these email addresses.[4]

As to Prateek Shah, however, the FTC has made no such showing. The FTC identifies three email addresses, and represents that Prateek Shah used two of them to set up a Facebook account, and the third to fill out a merchant application for "Pecon Services, LLC." *See* Novick

---

FTC to serve Pecon Software UK Ltd., along with its related corporate defendants, by email to Mahesh Shah, their common director. *See Madu*, 265 F.R.D. at 115 ("Service of process under Rule 4(f)(3) is neither a last resort nor extraordinary relief. It is merely one means among several which enables service of process on an international defendant.").

[4] The Court notes that the FTC has actually proposed to serve several of these defendants through numerous different email addresses. However, the Court only has been able to locate the FTC's evidence of the emails mentioned above in the record. Because the FTC has identified at least one verified email address for each defendant, the Court authorizes service at those addresses. The FTC is at liberty to attempt to notify defendants through the other, unverified emails to increase the likelihood that defendants receive notice, but the Court does not authorize service at these addresses.

Decl. Ex. 46 ¶¶ 29, 51.  But the first two email addresses are two among many that Prateek apparently listed on his Facebook page, and the actual page is not before the Court—only the FTC's investigator's summary of it is.  The third email address—sujoy@pecon.co.in—would appear to belong to a different defendant, Sujoy Roy, and the merchant application on which Prateek Shah allegedly listed this email address is not before the Court, either.  Accordingly, the Court cannot find that emails to these addresses would be likely to give Prateek Shah notice of this action.

### 2. *FTC v. Lakshmi*

In *Lakshmi*, the FTC proposes to serve two individual defendants and one corporate defendant by email.  For each of these defendants, also, the FTC has been able to verify the use of at least one email address in relation to the alleged scheme.  Somenath Das, the Operations Head of Lakshmi Infosoul Services Pvt. Ltd, used the email addresses somenath@lakshmigroup.net and hod.techpro@gmail.com to register PayPal and GoDaddy accounts for Lakshmi.  *See* Novick Decl. Ex. 27, Atts. B, p. 26, E, at 90–91, G, at 115–19.  Piyush Kheria, a director of Lakshmi, used the email addresses somenath@lakshmigroup.net and sales@24pccare.com to register PayPal accounts and a LogMeIn account for Lakshmi.  *See* Novick Decl. Ex. 27, Atts. B, at 26–28, G, at 115–19.  Finally, the corporate defendant, Lakshmi, lists the email address infosoul@lakshmigroup.net on its corporate registry form.  *See* Rodden Decl. Ex. 23, Att. A, at 82.  The FTC also proposes to serve the corporate entity through Kheria, who is listed as one of its directors.  *Id.*  Based on this evidence of defendants' use of the email

addresses in relation to the alleged scheme, the Court finds that the FTC has demonstrated a high likelihood that defendants would receive service at these email addresses.[5]

### 3. *FTC v. Zeal IT Solutions*

The FTC proposes to serve Kishore Ghosh and Zeal IT Solutions Pvt Ltd. by email. Here, too, the FTC has identified email addresses used in relation to the scheme by these defendants. Ghosh used the email address zealinfo123@gmail.com to register Zeal IT with LogMeIn, *see* Novick Decl. Ex. 24, Atts. B, at 31, 33, F, at 134, and the email address raushamaj999@yahoo.co.in to register Zeal IT on the support1care.com website, *see* Novick Decl. Ex. 24, Att. F, at 134. Zeal IT Solutions lists the email address vineetkedia25@rediffmail.com on its corporate registry. *See* Rodden Decl. Ex. 23, Att. A, at 61. In addition, the FTC proposes to serve Zeal IT Solutions by email to Ghosh, who is listed as one of its directors on its corporate registry. Rodden Decl. Ex. 23, Att. A, at 63. The Court finds that the FTC has demonstrated a high likelihood that defendants would receive service at these email addresses.

### 4. *FTC v. Finmaestros*

The FTC proposes to serve two individual defendants, Sanjeev Sood and Animesh Bharti, by email. The FTC proposes to serve three corporate defendants, Finmaestros, LLC, New World Services, Inc., and Shine Solutions Private Limited, by email to their directors, Sood and Bharti, and one corporate defendant, Greybytes Cybertech P. Ltd., using an email address provided by

---

[5] The Court notes that it appears that Somenath Das and Piyush Kheria are either both using the email address somenath@lakshmigroup.net, or one is using that address but the other's name. Nevertheless, the Court concludes that it is appropriate to serve both defendants at that address, especially in light of the fact that the FTC has identified an additional address for each defendant.

the company to customers.[6]  Here, too, the FTC has identified email addresses used in relation to the scheme by these defendants.  Sood used the email address jeevcal@gmail.com to register websites and set up online accounts for the corporate defendants.  *See* Novick Decl. Ex. 27, Atts. F, at 146–49; G, at 264–65.  Animesh Bharti used the email address animeshbharti1@gmail.com to register websites for the corporate defendants and to communicate with the companies' customers.  *See* Novick Decl. Ex. 27, Att. F, at 226; Rodden Decl. Ex. 26, ¶ 11.  Sood is listed as the director of Finmaestros and New World Services on each of their corporate registry forms.  *See* Rodden Decl. Ex. 26, Att. A, at 100–04.  Bharti is listed as one of Shine Solutions' directors on its corporate registry form.  *See* Rodden Decl. Ex. 26, Att. A, at 95–97.  Finally, Greybytes Cybertech instructed at least one customer to contact it with any questions at customersupport@greybytes.net, *see* Armstrong Decl. Ex. A, and the FTC represents that defendants have used this email address to contact the FTC.  Based on this evidence of defendants' use of these email addresses in relation to the alleged scheme, the Court finds that the FTC has demonstrated a high likelihood that defendants would receive service at these email addresses.

     **5.**    *FTC v. Marczak*

The FTC proposes to serve one defendant, Wahid Ali, by three email addresses: wwahid.ali@gmail.com, wahidforu11@yahoo.co.in, and wahid.78685@gmail.com.  The FTC represents that Ali emailed the FTC on October 8, 2012, and set up PayPal and Skype accounts, with the email address wwahid.ali@gmail.com.  *See* No. 12 Civ. 7192, Dkt. 45, at 3.  However,

---

[6] Finmaestros LLC and New World Services, Inc., which were previously registered in Florida and Wyoming, respectively, have already been served with the Summons and Complaint.  *See* No. 12 Civ. 7195, Dkt. 22–23.  However, the FTC represents that these companies' registered agents for accepting service in these states have since withdrawn, and, accordingly, the FTC seeks to serve future documents on these defendants through their corporate officers, Sood and Bharti.  *See* No. 12 Civ. 7195, Dkt. 26, at 1 n.1.

the FTC provides no citation to the record containing a copy of the email that Ali sent, and none of the three email addresses proposed are found at the record citations provided in the FTC's brief.  *See* Novick Decl. Ex. 25, Atts. K & M.  And although the FTC represents that CID records from Skype, Ebay, PayPal, and Facebook confirm the association between Ali and these email addresses, *see* No. 12 Civ. 7192, Dkt. 45-1 (Declaration of Sheryl Novick in Support of Motion for Alternative Service ("Novick Supp. Decl.")), ¶¶ 4–6, the actual records are not before the Court.  Thus, the Court does not find that there is a "high likelihood" that Ali would "receive and respond to emails sent to [those] addresses."  *PCCare247*, 2013 WL 841037, at *4.  Accordingly, on the record before the Court at this time, service on Ali by email would not comport with due process.  The FTC's motion to serve Ali by email is denied, without prejudice to renewal if the FTC can submit documentation supporting its assertion that Ali can be reached at the proposed email addresses.

### 6. Service by Facebook

As noted, the FTC also proposes to serve several defendants by Facebook message.  This Court has previously addressed the issue of service by Facebook in a related case.  *See PCCare247*, 2013 WL 841037, at *5–*6.  Although the Court observed that service by Facebook *alone* might raise due process concerns, it concluded that service by Facebook—in addition to service by email—was appropriate where defendants' use of Facebook had been demonstrated and where the plaintiff could demonstrate that service through this combination of means would be "highly likely to reach defendants."  *Id.* at *6.

In *Pecon Software*, the FTC proposes to serve four individual defendants by Facebook message.  To verify that the Facebook accounts at issue correspond to these four defendants, the FTC has compiled a table summarizing the information that its investigator obtained from

14

Facebook. *See* Novick Decl. Ex. 46 ¶ 29. However, unlike in *PCCare247*, the FTC has not supplied the Court with actual screenshots of the defendants' Facebook pages. Many of the individual defendants in these cases bear common names. At times, the email addresses used by the individual defendants have varied, as have the corporate entities with which the defendants have identified. Thus, although the Court has no reason to question the sworn declaration of the FTC's investigator, the Court cannot say with confidence, without actually viewing the Facebook pages and verifying the information allegedly listed thereon, that service by Facebook message would be highly likely to reach defendants. Accordingly, the FTC's motion to serve these defendants by Facebook is denied, without prejudice to renewal.

In *Marczak*, the FTC proposes to serve Wahid Ali through Facebook. The FTC represents that Ali registered his Facebook account with the same email addresses that he used to set up PayPal accounts used in the alleged scheme. *See* Novick Supp. Decl. ¶¶ 4–6. However, as discussed in Part III(B)(5), *supra*, the Court cannot find verification on the record that Ali used these email addresses. Accordingly, the Court cannot conclude that Ali is "highly likely" to be reached by service through Facebook, either. *PCCare247*, 2013 WL 841037, at *6. The FTC's motion to serve Ali by Facebook message is also denied, without prejudice.

### C. Service By Email is Warranted Here, Where Due Process is Satisfied

The Court also considers the FTC's good faith efforts to serve defendants by other means. *See Anticevic*, 2009 WL 361739, at *4. Pursuant to the Convention, the FTC has attempted to serve the Summons and Complaint on the India-based defendants via the Indian Central Authority. Panzera Decl. ¶¶ 3–10. These efforts, however, have been fruitless. As noted, on November 19, 2012, the Central Authority returned the full box of service documents to the FTC, stating that the addresses were not valid. After the FTC belatedly discovered, on

15

April 26, 2013, that the boxes had been returned, the FTC made numerous attempts to contact the Central Authority and obtain clarification as to the deficiencies in the FTC's submission. *See id.* ¶¶ 20–24. On those occasions that the FTC was able to reach someone at the Central Authority, no answers were forthcoming, and subsequent emails and phone calls have been ignored.

The FTC has made ample attempts to serve defendants by other means, but it is now left with no way to do so except by the Central Authority, which to date has not shown a disposition to act—or even to respond to the FTC's queries. This litigation must move forward, and it is not tolerable to wait for every motion in this case to be served by the Central Authority. *See Richmond Techs., Inc. v. Aumtech Bus. Solutions*, No. 11-CV-02460-LHK, 2011 WL 2607158, at *13 (N.D. Cal. July 1, 2011) (authorizing alternative service where service via Indian Central Authority would take 6–8 months). The Court's intervention is warranted here.

### D.     *Nunc Pro Tunc* Service

Between September 27, 2012 and October 4, 2012, the FTC emailed defendants with the Summons and Complaint. Because the FTC's attempts to serve these defendants through the Central Authority have proven futile, the FTC now seeks an order, pursuant to Rule 4(f)(3), retroactively approving the FTC's prior service of the Summons and Complaint by email.

Rule 4(f)(3) authorizes service on individuals in a foreign country "by other means not prohibited by international agreement, *as the court orders*." Fed. R. Civ. P. 4(f)(3) (emphasis added); *see also* Fed. R. Civ. P. 4(h)(2) (service of corporation permissible by same means). The Ninth Circuit and two district courts in this Circuit have held that this rule requires plaintiffs to obtain court approval *before* attempting such alternative service. *See Brockmeyer v. May*, 383 F.3d 798, 806 (9th Cir. 2004) (plaintiff "must obtain prior court approval for the alternative

method of serving process"); *Klein v. United States*, 278 F.R.D. 94, 97 (W.D.N.Y. 2011) (agreeing with *Brockmeyer*, and holding that the fact that defendant had actual notice of the action did not require a different result); *United States v. Machat*, No. 08 Civ. 7936 (JGK), 2009 WL 3029303, at *4 (S.D.N.Y. Sept. 21, 2009) (Koeltl, J.) ("Declaring prior service effective *nunc pro tunc* is not appropriate because Rule 4(f)(3) requires that the means of service be ordered by the Court and the Government's prior ineffectual efforts were not done pursuant to Court order."); *cf. Kaplan v. Hezbollah*, 715 F. Supp. 2d 165, 167 (D.D.C. 2010) (declining to authorize service *nunc pro tunc*, where plaintiff had served an individual alleged to be a leader of Hezbollah, but plaintiff had provided no indication that individual was authorized to accept service on behalf of Hezbollah or that Hezbollah had received actual notice). Other district courts have disagreed with this approach, holding that, so long as the defendant has actual notice of the action, prior court approval is not necessary. *See Marks v. Alfa*, 615 F. Supp. 2d 375, 380 (E.D. Pa. 2009) (finding prior court approval prudent, but not always necessary, and authorizing service *nunc pro tunc* where defendant "has received a copy of the summons and complaint and has returned a signed receipt acknowledging that fact"); *Exp.-Imp. Bank of U.S. v. Asia Pulp & Paper Co., Ltd.*, No. 03 Civ. 8554 (LTS)(JCF), 2005 WL 1123755, at *5 (S.D.N.Y. May 11, 2005) (same, where service by alternative means "has already proven effective"). However, "defective service cannot be ignored on the mere assertion that defendant had 'actual notice.'" *Weston Funding, LLC v. Consorcio G Grupo Dina, S.A. de C.V.*, 451 F. Supp. 2d 585, 589 (S.D.N.Y. 2006) (collecting cases). And although the text of Rule 4(f)(3) is not pellucid on the point, the Court agrees with those courts that have required prior approval of alternative means of service.

Here, several defendants have received actual notice of the pendency of this action; but others have not. The Court acknowledges that, as to those defendants that have received actual notice of this action, the "sole effect" of the Court's holding may be "to require plaintiffs to undertake the entirely redundant act of re-serving [defendants] in the same manner already undertaken." *Marks*, 615 F. Supp. 2d at 380. But the FTC suffers no prejudice from this requirement. The Court has authorized alternative service by email as to all but two of the defendants here, and the FTC, with negligible cost and effort, can effect email service within minutes of its receipt of this Opinion. And to the extent this delays the FTC's efforts to obtain final relief against defendants that do not appear to be interested in litigating this action, that delay is of the FTC's making. Although the FTC's failure to realize that the Central Authority had returned the service packages in November 2012 was undoubtedly an innocent oversight, it was an oversight nonetheless. Had the FTC not misplaced the returned package, it might have learned months ago that the Central Authority was unwilling to assist the FTC in its efforts to serve defendants. The Court declines to deem the FTC's prior service valid *nunc pro tunc*.

## CONCLUSION

The FTC's motion to serve defendants through alternative means is granted in part and denied in part. The FTC is granted leave to serve the Summons and Complaint and other documents in these cases on the following defendants at the following email addresses:

1. Mahesh Kumar Shah at mkshah@pecon.co.in.
2. Pecon Software Ltd., Pecon Infotech Ltd., and Pecon Software UK Ltd., by email to Mahesh Kumar Shah at mkshah@pecon.co.in.
3. Sujoy Roy at soc1919@gmail.com.
4. Vikas Kumar Gupta at vikasgupta82@gmail.com.

5. Zulfiquar Ali at ali@pecon.co.in.

6. Somenath Das at somenath@lakshmigroup.net and hod.techpro@gmail.com.

7. Piyush Kheria at somenath@lakshmigroup.net and sales@24sevenpccare.com.

8. Lakshmi Infosoul Services Pvt. Ltd. at infosoul@lakshmigroup.net and by email to Piyush Kheria at somenath@lakshmigroup.net and sales@24sevenpccare.com.

9. Kishore Ghosh at zealinfo123@gmail.com and raushamaj999@yahoo.co.in.

10. Zeal IT Solutions Pvt Ltd. at vineetkedia25@rediffmail.com and by email to Kishore Ghosh at zealinfo123@gmail.com and raushamaj999@yahoo.co.in.

11. Sanjeev Sood at jeevcal@gmail.com.

12. Animesh Bharti at animeshbharti1@gmail.com.

13. Finmaestros, LLC and New World Services, Inc. by email to Sanjeev Sood at jeevcal@gmail.com.

14. Shine Solutions Private Limited by email to Animesh Bharti at animeshbharti1@gmail.com.

15. Greybytes Cybertech P. Ltd. at customersupport@greybytes.net.

The FTC's motion to serve defendants Prateek Shah and Wahid Ali by email is denied, without prejudice. The FTC's motion to serve several defendants by Facebook message is denied, also without prejudice. The FTC's request that its prior email service be deemed valid service *nunc pro tunc* is denied.

To date, the FTC has been sending the Court biweekly letters, updating the Court on the status of these six related cases. The FTC is directed to continue to do so, but on a monthly basis.

19

SO ORDERED.

*Paul A. Engelmayer*

Paul A. Engelmayer
United States District Judge

Dated: August 7, 2013
      New York, New York